UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-181-GWU

NANCY MARSHALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-181  Nancy Marshall

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

08-181 Nancy Marshall

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

08-181  Nancy Marshall

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Nancy Marshall, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of Sjogren's disease, lupus, depression with mixed anxiety traits, and degenerative myopia.[1] (Tr. 29). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Marshall retained the residual functional capacity to perform her past relevant work as a security guard, and therefore was not entitled to benefits. (Tr. 30-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE if the plaintiff, a 52-year-old woman with a high school diploma plus a year of community college classes and work experience as a security guard (Tr. 573, 579) could perform any jobs if she were limited to "light" level exertion with standing or walking six hours in an eight-hour day and sitting six hours in an eight-hour day, and also had the following non-exertional restrictions. (Tr. 642). She: (1) could not crawl or climb ladders and

---

[1] Sjogren's syndrome or disease is "a symptom complex of unknown etiology, usually occurring in middle-aged or older women, marked by the triad of keratoconjunctivitis sicca with or without lacrimal gland enlargement, xerostomia with or without salivary gland enlargement, and the presence of a connective tissue disease, usually rheumatoid arthritis but sometimes systemic lupus erythematosus . . . ." <u>Dorland's Illustrated Medical Dictionary</u>, 27th Ed., p. 1644.

ropes; (2) could occasionally stoop, kneel, crouch, and climb ramps and stairs; (3) could reach overhead occasionally but could not tolerate repetitive handling (gross manipulation) with her left hand; (4) had a limited ability to read small print for a continuous period of time; (5) should avoid concentrated exposure to ultraviolet rays; and (6) had the mental capacity to understand, retain, and carry out at least simple instructions, maintain necessary concentration to carry out simple tasks, adequately relate to others including coworkers and supervisors, and adapt to routine pressures and changes in a work environment. (Tr. 642-3). The VE responded that such a person could perform the plaintiff's past relevant work as a security guard. (Tr. 643). In the alternative, the VE listed other jobs which would be available, and proceeded to list numbers in which they existed in the state and national economies. (Tr. 644).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a variety of problems, including legal blindness, Sjogren's disease, lupus, chronic arthritis, migraine headaches, right hip and elbow injuries from a car accident, and depression, with an amended onset date of February 29, 2004. (Tr. 82, 107).[2] She felt that she could not work at her security guard job because her longstanding lupus condition kept getting worse, with

---

[2] The plaintiff gave a variety of dates for her last day at work, but testified at one of the administrative hearings that she had been fired on the first day of 2005 due to company cutbacks. (Tr. 579-80).

8

back pain and pain in all of her joints; she also had protruding discs. (Tr. 581). Surgery had been recommended for her disc problem but she was afraid to have it. (Tr. 585). Other problems included depression, anxiety attacks, fatigue, shortness of breath, recurrent abscesses, and left arm weakness. (Tr. 584-5, 588, 598, 635). At the second administrative hearing, she noted that a stent had been placed in her heart in February, 2006, and she had been told that one artery was still clogged but the doctors did not want to operate because of lupus. (Tr. 624-5). She felt that she was able to lift one gallon of milk or more, sit for one hour, and walk 30 to 45 minutes on level ground. (Tr. 592-4). At the time of the first hearing in August, 2005, she was able to walk six blocks to the bus terminal and back. (Tr. 592). She had been able to drive a car until shortly before the August 25, 2005 hearing, but she had been unable to renew her driver's license in July because of poor vision. (Tr. 576).[3] Regarding her mental problems, Mrs. Marshall stated that she had been psychiatrically hospitalized in July, 2005, with suicidal thoughts, which she related to a variety of issues, including everyone in her family forgetting her birthday, the fact that she had lost her job, that her son was in jail, that she had had to give up her dog, that she could not get to her family reunion, and that nobody sent her any money. (Tr. 594-6). At the August 22, 2006 administrative hearing, the plaintiff stated that she had not pursued counseling at her local Comprehensive

---

[3] The plaintiff suggested that she had new glasses and might reapply for a license. (Tr. 578).

Care Center because she was starting to get used to some of the changes in her life "that I don't want to get used to," and she believed that once she had "a lot of those situational problems taken care of" she would be doing a lot better. (Tr. 639-41). She also stated that the medication Zoloft was working fairly well. (Tr. 640).

Medical records in the transcript include reports of hospitalizations in 2001 and 2003, prior to the amended onset date, for complaints of chest pain. These visits reiterated what were apparently previous diagnoses of Sjogren's syndrome and lupus, but no functional restrictions were provided and the plaintiff continued to work. (Tr. 233-5, 256-7). The plaintiff was hospitalized in February, 2004, after being hit by an SUV as a pedestrian, and was diagnosed with hip and elbow contusions and dorsal sprain/strain. (Tr. 275). An MRI showed degenerative disc changes in the thoracic spine. (Tr. 280). The plaintiff was referred to an injury and rehabilitation center, where she was treated by Dr. Richard Ramirez on several occasions with medication and thoracic epidural injections, as well as moist heat, massage, and ultrasound treatment. (Tr. 302-11).

Dr. Ramirez prepared a Medical Report dated May 28, 2004 stating that, although Mrs. Marshall had responded well to treatment and pain management interventions, and he estimated that she was improved by 60 percent, she should be restricted from heavy lifting, excessive bending or stooping, and prolonged walking or standing. (Tr. 301). The ALJ's limitations were consistent with the lifting, bending and stooping restrictions but he declined to accept the restrictions on

prolonged standing and walking, due to Mrs. Marshall's statement that, at the time Dr. Ramirez's opinion was given, she was walking approximately 12 blocks round trip to the bus terminal on a daily basis and engaging in other activities including shopping, washing dishes at the Salvation Army, and attending church three to four times a week. (Tr. 31). He also reasonably opined that the plaintiff's own statement that she could walk 30 to 45 minutes was inconsistent with the opinion given by Dr. Ramirez. (Tr. 32). The ALJ chose to rely instead on the opinions of state agency reviewing physicians James Ramsey and C. Hernandez, who reviewed at least a portion of the evidence and opined that the plaintiff would have restrictions consistent with the hypothetical question. (Tr. 327-35, 359-65).

Although the plaintiff did have subsequent hospitalizations as well as outpatient treatment, she was discharged from an April, 2005 hospitalization for chest pains with cardiac problems essentially ruled out and no restrictions on her activities (Tr. 368-71), and was discharged from a February, 2006 hospitalization for placement of a stent due to "superior vena cava syndrome" with activities "as tolerated" (Tr. 551). Nor does it appear that any restrictions were placed for any of her other conditions, such as cysts. (E.g., Tr. 555). The mere diagnosis of a condition does not establish disability. See Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990). The plaintiff failed to prove any functional limitations due to these conditions.

08-181  Nancy Marshall

The plaintiff, who is proceeding pro se, argues on appeal that the medical evidence shows her medical condition has worsened between 2004 and 2008, and has submitted updated medical records that she wishes to have considered. However, this court's review is limited to evidence that was before the ALJ at the time of his most recent decision in September, 2006, and it may consider new evidence only for the purposes of ordering a remand for additional consideration if it can be shown that the evidence is both new and material and there was "good cause" for failing to submit it earlier. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993). While the evidence is "new" in the sense that it did not exist before the ALJ's decision, its materiality is dubious. Some of the evidence is merely an updated disability report containing the plaintiff's statements that her condition has worsened. Docket Entry No. 13. There is also a letter from Dr. Katherine K. Temprano, a rheumatologist, which states that the physician has been treating the plaintiff since June of 2006, that she has a diagnosis of "lupus/Sjogren's" and a history of clotting abnormalities, states that the disease "can be associated" with inflammatory arthritis causing chronic joint pain, and asserts that the plaintiff has severe fatigue that limits her activities to an unspecified extent. Docket Entry No. 13, p. 6. In addition to failing to provide specific functional limitations, Dr. Temprano does not relate limitations specifically to the period for September 7, 2006. Therefore, her evidence does not provide a basis for remand. A letter from an optometrist, Dawn Stratton, is dated September 26, 2008, and indicates that the

08-181  Nancy Marshall

plaintiff was diagnosed with myopic degeneration and has a best corrected visual acuity with glasses of 20/200 in both eyes.  Docket Entry No. 13, p. 7.  As the ALJ noted, the evidence submitted to him indicated a best corrected vision of 20/40. (Tr. 32, 248, 250).  If the plaintiff's condition has worsened since the ALJ's decision, her proper course of action is to file a new application for benefits.

From a mental standpoint, the plaintiff did not have regular psychological or psychiatric treatment, although she was taking Zoloft.  (Tr. 589, 640).  She underwent a consultative psychological evaluation by Psychologist Thomas Shurling in June, 2004, at which time she denied any anxiety or distress other than some memory problems.  (Tr. 339).  Dr. Shurling noted that Mrs. Marshall was alert, had a euthymic mood and a fluid affect, and there was no evidence of disturbance in the form or content of her thought.  (Id.).  Despite her statements, this testing showed good performance on memory tasks.  (Tr. 339-40).  He did not make any diagnosis, opined that Mrs. Marshall functioned within normal limits in all spheres and had a current Global Assessment of Functioning (GAF) score of 75 to 85.  (Tr. 340-1). GAF scores in this range reflect absent or no more than transient symptoms with no more than a slight impairment in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.  A state agency psychological reviewer concluded that Mrs. Marshall had no medically determinable mental impairment.  (Tr. 342).

08-181 Nancy Marshall

Subsequently, however, Mrs. Marshall was psychiatrically hospitalized between July 19 and July 22, 2005 at the University of Kentucky Medical Center (UKMC) with a diagnosis of major depressive disorder with suicidal ideation. (Tr. 436). She reported that she had been depressed since January, 2005 when she lost her job, and had been living at a Salvation Army shelter for five months. (Tr. 440). Her specific suicidal ideation developed on July 17, 2005, when no one called or wrote to acknowledge her birthday. (Tr. 441). As previously noted, Mrs. Marshall stated at the administrative hearing that there were a number of other issues upsetting her at the time, including the fact that her son was in jail and she had been unable to attend her family reunion. (Tr. 594-6). During her hospitalization, she was started on an increased dose of Zoloft as well as temporary medications for anxiety; at the same time, antibiotics were given to help control skin lesions which were caused by a staph infection. (Tr. 442-3). Her mood reportedly improved, and by the time of discharge she denied any suicidal or homicidal ideation and was discharged with instructions to follow up at her local Comprehensive Care Center. (Tr. 443). Mrs. Marshall had chest pain on the date of discharge, but a work-up showed no abnormalities and it was concluded that the pain was probably due to anxiety rather than being cardiac in nature. (Tr. 436-7). She was discharged with a current GAF score of 30 but her activities were "ad lib as tolerated." (Tr. 436, 444). As previously stated, the plaintiff chose not to attend

the Comprehensive Care Center. (Tr. 639). There is no evidence of further mental health treatment or any indication of restrictions.

The ALJ concluded that the plaintiff's daily activities were inconsistent with her subjective complaints of debilitating mental impairments. (Tr. 32). The plaintiff responds on appeal that she could no longer perform some of the activities described by the ALJ. She states, for instance, that she is unable to get a driver's license whereas the ALJ had cited her ability to drive as a reason for discounting her allegations. Unfortunately for the plaintiff, even if the ALJ overstated her abilities to some extent, the evidence does not establish greater mental restrictions than described in the hypothetical question. Dr. Shurling and the state agency reviewer clearly found no limitations, and no specific limitations were assigned after her brief psychiatric hospitalization in 2005. Therefore, the medical evidence does not support a remand for further consideration.[4]

---

[4] The court notes the GAF of 30 on discharge from UKMC in July, 2005 would indicate much greater restriction, since a GAF in this range reflects a person whose behavior is "considerably influenced by delusions or hallucinations," or "serious impairment in communication or judgment," or "inability to function in almost all areas." DSM-IV-TR, p. 34. Under certain circumstances, the ALJ's failure to discuss this score might be grounds for a remand, since it was from a treating source. See Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). In the present case, a remand is not justified. The limitations associated with a GAF of 30 appear to be inconsistent with the description of the plaintiff's condition at the time of her discharge from UKMC. Moreover, her subsequent testimony that she had adjusted to many of the stressful situations in her life, and that she had a fairly good response to increased dosage of Zoloft (Tr. 639-41), appear to directly contradict the degree of limitation implied by the low GAF score. An ALJ is not required to credit the opinion of a treating physician when it is contradicted by the plaintiff's own statements. Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004).

08-181 Nancy Marshall

Finally, for the reasons cited in the Commissioner's brief, Docket Entry No. 14, pp. 13-14, the plaintiff's argument that it was error for the same ALJ to hear her case on two occasions is without merit.

The decision will be affirmed.

This the 31st day of March, 2009.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**